STATE EX REL. CITY OF BUTTE, RELATOR, *v.* POLICE
COURT OF THE CITY OF BUTTE ET AL., RESPONDENTS.

(No. 5,215.)

(Submitted October 26, 1922. Decided November 22, 1922.)

[210 Pac. 1059.]

*Supervisory Control—Cities and Towns—Coal Dealers—Licenses*
*—Invalidity—Powers—Ordinances in Conflict With Statute.*

Cities and Towns—Coal Dealers—Licenses—Invalidity.
    1.  Section 2328, Revised Codes of 1921, requires every coal dealer in
    the state to pay annually to the state a license of one dollar and in
    addition thereto five cents per ton for every ton of coal sold by him
    during any one year upon which the mine license fee exacted by sec-
    tion 2317 has not been paid by the mine operator. Under section
    5039, subdivision 3, the power of cities or towns to license an in-
    dustry or business is limited to an amount not to exceed the sum required
    by the state to be paid to it by the same business. *Held,* that a city
    ordinance exacting a fee of one dollar from coal dealers and in ad-
    dition five cents per ton for every ton of coal sold, without incor-
    porating therein the clause limiting the payment of the five cents to
    coal upon which the mine license fee exacted by section 2317 had not
    been paid to the state, was invalid as in excess of the power of the
    city to impose.

Same—Extent of Powers.
    2.  The statute creating a municipality, or under which it exists, is
    the charter of its powers, and it has only such authority as is con-
    ferred expressly and such as is necessarily implied or is indispensable
    in order properly to accomplish the purpose of its organization.

Same—Ordinances in Conflict With Statute Void.
    3.  Whenever an ordinance conflicts with a state statute, the ordinance
    must give way, since it is to be presumed that the state in the statute
    creating the municipality has granted in unmistakable terms every-
    thing that it intended to grant.

Same—Ordinances—Validity—How Determinable.
    4.  The validity of an ordinance, like the validity of a statute, is to
    be determined, not by what has been done under it, but by what may
    be done under its terms.

Same—Ordinances—Partial Invalidity—Inapplicability of Rule.
    5.  The rule that an ordinance though invalid in part is not void *in*
    *toto,* if by eliminating the void portion sufficient remains to make it
    a workable whole, does not apply where in order to make it work-
    able it is necessary to add a limitation found in a statute, a thing
    courts are without authority to do.

Original application for Writ of Supervisory Control, by the
State, on the relation of the City of Butte, to have annulled
an order or judgment of the Police Court of that city, and

[65 Mont. 94.]

D. F. Shea, Acting Judge of said court. Demurrer sustained, and proceeding dismissed.

*Mr. J. O. Davies* and *Mr. Miles J. Cavanaugh,* for Relator, submitted a brief; *Mr. Cavanaugh* argued the cause orally.

The state has not delegated the revenue-raising power to cities, but it has delegated the power to cities to exact license and inspection fees in the exercise of its police power. The ordinance attacked is of the latter kind. (*Reilly* v. *Hatheway,* 46 Mont. 1, 125 Pac. 417; *State* v. *McKinney,* 29 Mont. 375, 378, 1 Ann. Cas. 579, 74 Pac. 1095.) "When a money payment is exacted for the privilege of pursuing occupations looked upon as requiring police supervision this is generally designated as a license tax levied by virtue of the police power." (McQuillin on Municipal Corporations, sec. 991; *North Hudson County Ry. Co.* v. *Hoboken,* 41 N. J. L. 71–81; *Ex parte Cramer,* 62 Tex. Cr. 11, Ann. Cas. 1913C, 588, 36 L. R. A. (n. s.) 78, 136 S. W. 61.)

The prevailing rule is that under the power to regulate the city may license and charge a reasonable fee to cover the expense of regulation, especially concerning those occupations wherein regulation and supervision appear necessary or desirable for the public good. (*Fort Smith* v. *Ayers,* 43 Ark. 82; *City of Jacksonville* v. *Ledwith,* 26 Fla. 163, 23 Am. St. Rep. 558, 9 L. R. A. 69, 7 South. 885; *Brown* v. *City of Galveston,* 97 Tex. 1, 75 S. W. 488; *Ex parte Denny,* 59 Tex. Cr. 579, 129 S. W. 1115.)

Ordinances enacted for the purpose of licensing, regulating or throwing restrictions around a trade, calling or occupation in the interests of the public are everywhere upheld. (17 R. C. L. 542; *Grainger* v. *Douglas Park Jockey Club,* 148 Fed. 513, 8 Ann. Cas. 997, 78 C. C. A. 199; *State* v. *Conlon,* 65 Conn. 478, 48 Am. St. Rep. 227, 31 L. R. A. 55, 33 Atl. 519; *Ash* v. *People,* 11 Mich. 347, 83 Am. Dec. 740; *City of Grand Rapids* v. *Braudy,* 105 Mich. 670, 55 Am. St. Rep. 472, 32 L. R. A. 116, 64 N. W. 29.)

If it be argued that the state has only exacted a license fee of one dollar on retail dealers, and that the city cannot charge more than one dollar, we can say that such a sum would be wholly inadequate to provide for the regulation of the business under subdivision 23, and that the additional license fee of five cents a ton may be lawfully exacted to pay the charge of such regulation as contemplated by subdivision 23. There is no restriction on the power to license occupations, except the amount must not be unreasonable and must not in our state amount to a tax for revenue. (*Reilly* v. *Hatheway,* 46 Mont. 1, 125 Pac. 417; *Davis* v. *Mayor etc. of Macon,* 64 Ga. 128, 37 Am. Rep. 60; *Scottish Union etc. Ins. Co.* v. *Herriott,* 109 Iowa, 606, 77 Am. St. Rep. 548, 80 N. W. 665.)

That some part of an ordinance is void does not make it void *in toto,* if the ordinance with the portion eliminated is a workable ordinance. (17 R. C. L., pp. 551, 552; *Magneau* v. *Fremont,* 30 Neb. 843, 27 Am. St. Rep. 436, 9 L. R. A. 786, 47 N. W. 280; *Reilly* v. *Hatheway,* 46 Mont. 1, 125 Pac. 417.)

*Messrs. Nolan & Donovan* and *Mr. F. E. Blodgett,* for Respondents, submitted a brief; *Mr. L. P. Donovan* and *Mr. Blodgett* argued the cause orally.

The ordinance is in general a paraphrase of Chapter 3, Extra Session Laws of 1921, but attempts to impose upon the retail coal dealer a higher license tax than is imposed upon him by the state law, in that he is required to pay such license at the rate of five cents per ton upon all coal sold by him, whereas under the state law he is exempted from the payment of said tax upon coal for the mining of which a mine operator has paid the license fee or assumed liability for the payment thereof. (Sec. 2328, Rev. Codes 1921.) It is apparent, therefore, that the city has attempted to impose a license which exceeds the sum required by the state law. This the city has no authority to do. (Sec. 5039, subd. 3.) The city has only such power as is granted to it by the statute, either expressly or by necessary implication. (*Helena Light & Ry. Co.* v. *City*

[65 Mont. 94.]

*of Helena,* 47 Mont. 18, 130 Pac. 446; *State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695; *Mc-Gillic* v. *Corby,* 37 Mont. 249, 17 L. R. A. (n. s.) 1263, 95 Pac. 1063; *City of Helena* v. *Kent,* 32 Mont. 279, 4 Ann. Cas. 235, 80 Pac. 258; 17 R. C. L., secs. 45, 525, and cases cited.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

By this proceeding it is sought to have annulled an order or judgment of the police court of the city of Butte, which in effect held that Ordinance 1738 of that city is null and void. While other questions are raised in this court, the validity of the ordinance is the only matter with which we need concern ourselves. Ordinance 1738 provides that every retail coal dealer in the city must annually procure a city license to [1] conduct his business, and must pay to the city therefor one dollar and in addition thereto five cents per ton for every ton of coal sold by him during the year. If the power of the city to enact an ordinance on the subjects exists, it must be found in some statute, conferred in express terms or by necessary implication. The statutes relied upon as the source of the city's authority are subdivisions 3 and 23 of section 5039, Revised Codes of 1921, which, with the introductory clause, read as follows:

"The city or town council has power:  *  *  *

"3. To license all industries, pursuits, professions, and occupations, and to impose penalties for failure to comply with such license requirements; but the amount to be paid for such license must not exceed the sum required by the state law when the state law requires a license therefor.  *  *  *

"23. To regulate the inspection, weighing, and measuring of wood, coal, stone, corn, or other grain, and hay, within the city or town."

In their brief, counsel for the city contend that "there is no restriction on the power to license occupations, except the amount must not be unreasonable, and must not, in our state,

65 Mont.—7

amount to a tax for revenue," and *Reilly* v. *Hatheway*, 46 Mont. 1, 125 Pac. 417, is cited in support of the statement; but the case does not hold to any such doctrine and could not. Subdivisions 3 and 23, above, are parts of one statute, refer to the same general subject matter, and must be construed together. We may assume that under subdivision 23 the city has implied power to license the business of selling coal at retail and to exact a fee therefor as appropriate means of regulation, but, even so, the power is not unrestricted; on the contrary, the amount of the license fee to be charged is limited by the express terms of the concluding clause of subdivision 3. In other words, the state has specifically limited the licensing powers of cities and towns, so that it is immaterial whether the city in this instance seeks to justify Ordinance 1738 under subdivision 3 or subdivision 23, for its result is the same: The license fee which it may exact from a retail coal dealer cannot exceed the sum required by the state law, where the state law requires a license for the same business, and our state statute does require a license from every retail coal dealer. (Sec. 2328, Rev. Codes 1921.)  Assuming that Ordinance 1738 is strictly a police regulation, the only question for determination is: Does the amount exacted by it exceed the sum collectible by the state under section 2328?  By virtue of the statute (section 2328) every retail coal dealer in this state is required to pay to the state annually one dollar and in addition thereto five cents per ton for every ton of coal sold by him during the year upon which the mine license fee exacted by section 2317, Revised Codes of 1921, has not been paid or payment thereof assumed by the mine operator who produced the coal. A simple illustration will serve to exhibit the working of the statute on the one hand and the ordinance on the other. A and B are retail coal dealers in the city of Butte. Each must pay to the state the annual fee of one dollar, and likewise he must pay to the city an annual fee of one dollar, and each of these fees must be paid, whether the dealer actually sells any coal or does not. A purchases all of

his coal (6,000 tons) from a mine operator in this state who does not pay any mine license fee thereon. In addition to the one dollar mentioned above, A must pay to the state $300, and he must pay precisely the same amounts to the city by virtue of the ordinance. Under these circumstances there is not any discrimination whatever. B, however, purchases all of his coal (6,000 tons) from a mine operator in this state who pays the mine license fee upon the whole of it. Under section 2328 B pays to the state one dollar per year, and no more; but under the ordinance he is required to pay to the city $301, or $300 in addition to the one dollar which he must pay in any event. Under these circumstances, it is idle to say that the amount to be paid under the ordinance does not exceed the sum required by the statute.

But it is urged on behalf of the city that, under the hypothetical case above, the state does not impose any license fee upon B, and therefore the city is free to exact the fee of five cents per ton from him. The argument has its foundation entirely upon a false premise, and the conclusion is equally false. Section 2328 provides that every retail coal dealer in this state must annually procure from the state treasurer a license to engage in such business, and must annually pay to the state treasurer for such license a fee of one dollar, together with an additional sum equal to five cents per ton for every ton sold by him during the year and for the mining of which coal no mine operator has paid or assumed liability for the payment of any license fee to the state of Montana under any law of this state. To us the language of this section is perfectly plain, but when read in connection with section 2330, its meaning cannot be mistaken. Section 2330 provides: ''The said license fee of one dollar shall be paid by each person within thirty days after the end of the quarter ending March 31 in each year, and such additional license fee of five cents per ton shall be paid in quarterly installments for the quarters ending March 31, June 30, September 30 and December 31 in each year, beginning with the quarter ending March 31, 1921, and

the total amount of such license fees becoming due for any quarter shall be paid to the state treasurer within thirty days after the end of the quarter for which the same is due." There cannot be any doubt that by these provisions every retail coal dealer in this state must annually procure his license to do business, and must pay to the state one dollar therefor, without reference to the fact that the mine operator from whom he procures his supply pays or does not pay the mine license fee. Under section 2328 above, B must pay to the state the fee of one dollar in any event, and the mere fact that such fee is nominal in amount does not affect the result. The limitation imposed by subdivision 3, section 5039, above, renders the ordinance void.

The invalidity of a city ordinance does not depend altogether [2–5] upon its conflict with any provision of the Constitution. The statute creating a municipality, or under which it exists, is the charter of its powers, and it has only such authority as is conferred expressly and such as is necessarily implied, or is indispensable in order properly to accomplish the purpose of its organization. Whenever an ordinance conflicts with a state statute, the ordinance must give way, for it is to be presumed that the state has granted in unmistakable terms everything that it intended to grant at all. (*State. ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695; *Helena Light & Ry. Co.* v. *City of Helena,* 47 Mont. 18, 130 Pac. 446.) If it be suggested that there is not any retail coal dealer in Butte who procures his coal supply from a mine operator who fails to pay the mine license fee, the answer is that such a case may arise in the future, if it has not arisen in the past. The validity of an ordinance, like the validity of a statute, is to be determined, not by what has been done under it, but by what may be done under its terms. (*State ex rel. Holliday* v. *O'Leary,* 43 Mont. 157, 115 Pac. 204; *Brown* v. *City of Denver,* 7 Colo. 305, 3 Pac. 445; 2 McQuillin on Municipal Corporations, sec. 811.)

It is suggested by counsel for the city that, even though Ordinance 1738 may be invalid in part, it is not necessarily void *in toto,* if the ordinance with the void portion eliminated is a workable ordinance. The rule thus contended for is recognized by all of the authorities, but it cannot be made applicable in the instant case. The fault with Ordinance 1738 is not that it includes specific provisions which are invalid, but that it is invalid altogether, because it seeks to authorize the exercise of authority which the city does not have, or, in other words, Ordinance 1738 requires the addition of the limitation found in section 2328 in order to render it valid, and this court is without authority to make such addition.

The demurrer to the petition is sustained and the proceeding is dismissed.

*Dismissed.*

ASSOCIATE JUSTICES FARR, COOPER and GALEN concur.