No. 13321

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

RICHARD J. BAILS and
PATRICIA J. BAILS,
husband and wife,

     Plaintiffs and Appellants,

 -vs-

STAN GAR and ALICE GAR,
husband and wife, and
STAN GAR, as Administrator
of the Estate of Dale Gar,
Deceased,

     Defendants and Respondents.

---

Appeal from: District Court of the Eighteenth Judicial District,
    Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

 For Appellants:

   Berg, Angel, Andriolo and Morgan, Bozeman, Montana
   Charles Angel argued, Bozeman, Montana

 For Respondents:

   Hibbs, Sweeney and Colberg, Billings, Montana
   Rex Hibbs argued, Billings, Montana

---

       Submitted: October 14, 1976

        Decided: DEC 28 1976

Filed: DEC 28 1976

_Thomas J. Kearney_
        Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

In an action by the buyers of a ranch against the sellers for damages based on alleged fraudulent representations inducing them to enter into the purchase contract, the district court, Gallatin County, granted summary judgment to the sellers. Buyers appeal.

Plaintiffs are Richard J. Bails and Patricia J. Bails, his wife, who contracted to purchase a ranch in Gallatin County for $750,000 from defendants Stan and Alice Gar. Bails, a factory worker from Michigan and his wife, a school teacher, had visited Montana a few years ago, liked the country, and had been looking for property here since. Bails contacted William Richardson, a licensed real estate broker from South Dakota, and asked his aid in finding a ranch in Montana with a carrying capacity of 500 cows with calves.

Gar contacted Richardson and offered the ranch for sale that is the subject of this action. Gar had bought the ranch less than a year earlier but wished to sell, in part because of the failing health of his son who died during the sale negotiations. Gar himself died during the course of this litigation after he had given his deposition herein. Richardson, in his deposition, stated that on the basis of the notes he took when Gar telephoned him that Gar told him the land would yield 50 to 80 bushels of wheat per acre and 90 bushels of barley per acre.

Norman Wheeler, a licensed real estate broker from Belgrade, Montana, had the listing on the ranch. Wheeler had extensive knowledge and experience in the area in real estate appraisals for lending institutions, had handled the earlier sale of the ranch in question to Gar, and had appraised it many years earlier. Wheeler responded to Richardson's inquiry by sending a one page description of the ranch. This brochure

contained all of the representations alleged in the complaint with the exception of income producing capacity. Apparently Wheeler and Gar had prepared the brochure. The two real estate agents agreed to split the commission on the possible sale.

When Bails received the brochure, he flew to Bozeman to see the land in mid-May, 1974. He rented a car on the evening of his arrival, drove to the ranch, and Gar gave him a quick tour of the place. The ranch is near Three Forks, Montana, in the Willow Creek area. It consists of bottomland along the Jefferson River, benchland grazing, a grazing lease on public land, and about 1,200 acres of dry land grain cropland on the bench. Bails, in his deposition, stated Gar spoke in very glowing terms of the ranch and told him he could make $50,000 to $100,000 on grain alone.

The following morning Richardson joined Bails and they went out to the ranch where Wheeler and Gar gave them another tour. Bails questioned the dryness, but said they told him the area was suffering from a drought and that a little rain would really green it up. Richardson was very enthused and told Bails the ranch would return income of $100,000 per year, but Wheeler cut that figure to $80,000. Bails was also very enthused.

Later that morning Bails agreed to buy the place for $750,000 plus $25,000 for the equipment. Bails signed a "Receipt and Agreement to Sell and Purchase" and made a payment of $20,000. Bails was in possession of the ranch for slightly over a month at the time the formal contract for deed was executed, on July 23, 1974. This was the fifth sale of the ranch in five years, all by contract for deed.

Within a year Bails became dissatisfied with the ranch and brought the instant action. Bails brought a similar action against the two real estate brokers. A third action was brought

by a previous seller against Gar and Bails for default on the contracts for deed.

Eight depositions were taken with a number of exhibits attached. All parties agreed that the depositions could be used in all three actions. The other two cases have been appealed but not yet heard by this Court.

In the instant action Gar has also counterclaimed against Bails for default and $150,000 due on the contract, plus interest. This counterclaim and Bails' reply are not involved in the present appeal.

Following pretrial discovery, the district court granted summary judgment to Gars on Bails' claim for damages for false representation. Bails appeals from the summary judgment against him.

The issues for review on appeal are stated by plaintiff in this manner:

(1) Whether the pleadings, depositions and records in this action show that there are any genuine issues of material fact thereby rendering the granting of a summary judgment inapplicable;

(2) Whether the pleadings, deposition and records in this action show that defendants were entitled to a judgment as a matter of law.

Plaintiffs claim five specific misrepresentations:

(1) That the ranch would raise and sustain 400 animal units.

(2) That the ranch consisted of approximately 5,200 deeded acres.

(3) That the ranch had 300 acres of hay land which produced 900 tons of hay per year.

(4) That there were 600 acres of cropland which produced

- 4 -

21 bushels of grain per acre.

(5) That the property would produce income of at least $80,000 per year.

A summary judgment can be granted only where the pretrial record discloses (1) the absence of any genuine issue of material fact, and (2) that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The principles of summary judgment under Rule 56(c) are collected and well stated in Harland vs. Anderson, ___Mont.___, 548 P.2d 613, 33 St.Rep. 363, and we will not repeat them here.

The district court in its order granting summary judgment cited as controlling law, and the parties seem to agree, that the following elements are necessary to establish actionable fraud based on alleged misrepresentation: In Cowan v. Westland Realty Co., 162 Mont. 379,/512 P.2d 714, the Court stated:
383,

> " * * * the plaintiff must prove to make out a prima facie case of fraud: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." See also, Lee v. Stockman's Nat. Bank, 63 Mont. 262, 207 P. 623.

The district court's order granting summary judgment did not specify which of the above elements was lacking. Accordingly, we will examine the pretrial records with respect to all these elements, with emphasis on those raised by the parties in their briefs and upon oral argument.

One of the principal disagreements of the parties is whether Bails relied on the alleged representations. The contract for deed contains the following provision:

> "13. Vendees have fully inspected the premises and are familiar therewith and enter into this agreement by reason of their own inspection and

judgment and acknowledge that there are no induce-
ments to purchase said property by reason of any
representations on the part of the Vendors or
persons acting by, through or for said Vendors * * *."

Bails had an opportunity to and did inspect the premises and

made inquiry about the ranch demonstrating that he did not rely

on the alleged misrepresentations. Under such circumstances,

they argue, the above provision should be given full effect

creating an estoppel against Bails' action.

The applicable law has been stated in 37 Am Jur 2d,

Fraud and Deceit, §8, p. 28:

"Fraud vitiates every transaction and all con-
tracts. * * * As a general rule, fraud will
vitiate a contract notwithstanding that it con-
tains a provision to the effect that no repre-
sentations have been made as an inducement to
enter into it, or that either party shall be
bound by any representation not contained therein,
or a similar provision attempting to nullify ex-
traneous representations. Such provisions do
not, in most jurisdictions, preclude a charge
of fraud based on oral representations."

The reason for this rule has been stated in Jordan vs.

Nelson, (Iowa 1920), 178 N.W. 544, quoting from Bridger v. Goldsmith,
both
143 N.Y. 424, 38 N.E.,/leading cases from other jurisdictions:

"'I assume that there is no authority that we are
required to follow in support of the proposition
that a party who has perpetrated a fraud upon his
neighbor may, nevertheless, contract with him in the
very instrument by means of which it was perpetrated,
for immunity against its consequences, close his
mouth from complaining of it and bind him never
to seek redress. Public policy and morality are
both ignored if such an agreement can be given
effect in a court of justice. The maxim that
fraud vitiates every transaction would no longer
be the rule but the exception.'" Also see 10 A.L.R.
1472 and 97 ALR2d 849.

We have previously held that a similar contract provision

did not preclude proof that prior oral representation was in

fact relied upon. Goggins v. Winkley, 154 Mont. 451, 465 P.2d

326. Fraud is generally a question of fact for the jury. Section

13-310, R.C.M. 1947; Healy v. Ginoff, 69 Mont. 466, 220 P. 539.

Bails' deposition indicates that he did rely on the

- 6 -

alleged representations. He testified that he believed Gar and Wheeler were honest and they should know the productive capacity of the land. Bails had no experience in cattle ranching. Wheeler was an appraiser of ranches in the area of many years experience. Gar was a rancher of 40 years experience who had worked the ranch in question for about one season. It appears from his depositions that Bails relied on the interrelated representations as to productivity, carrying capacity, and income in determining whether the ranch would produce sufficient profit to meet the large debt requirements of the five underlying contracts.

We hold, therefore, that the pretrial record is sufficient to establish a genuine issue of material fact on whether Bails in fact relied on the alleged representations and that the exculpatory clause in the contract for deed does not estop Bails' action for fraud as a matter of law.

Another principal contention of Gars is that Bails had no right to rely on the alleged representations because he investigated the facts for himself or at the very least the means were available whereby he could ascertain the truth.

The legal principle involved has been stated by this Court in Lowe v. Root, 166 Mont. 150, 156, 531 P.2d 674, quoting from Lee v. Stockman's Nat. Bank, 63 Mont. 262, 284, 207 P. 623:

> "'"When it appears that a party, who claims to have been deceived to his prejudice has investigated for himself, or that the means were at hand to ascertain the truth * * * of any representations made to him, his reliance upon such representations, however false they may have been, affords no ground of complaint."'"

Also see Grinrod v. Anglo-American Bond Co. 34 Mont. 169, 85 P. 891 and Power & Bros. v. Turner, 37 Mont. 521, 97 P. 950.

In the instant case Bails made two short tours of the ranch before executing the initial "Receipt and Agreement to Sell and Purchase" and was in possession of the property for almost

a month before executing the formal contract for deed. However, the shortcomings of which he complains here concerning acreage and productivity are not of such a nature that a man of Bails' experience can be held to have the means at hand to discover the truth as a matter of law. Their determination might be held to require experience in ranching on this ranch or in this particular locality. Bails was inexperienced in ranching and new to the country. The inference could be drawn that Bails reasonably assumed the alleged representations were based on the knowledge of Gar and Wheeler. The pretrial record discloses that Bails only began to learn of the deficiencies much later after he had taken soil samples, tried to farm it, talked to neighbors, and Gar spoke more candidly as they became friends.

The situation here is distinguishable from Lowe where the physical condition of the hotel premises and its deficiencies were open and notorious, a superficial inspection would reveal them, and plaintiff admitted inspecting the premises. The situation here is generally distinguishable from Grinrod where the terms of the bonding arrangement were printed on the bonds.

We hold that the pretrial record in the instant case discloses a genuine issue of material fact concerning Bails' right to rely on the alleged representations, precluding summary judgment on this basis.

Another point of contention is whether the party making the alleged representation knew it was false or was ignorant of its truth and intended that it be acted upon. This is by definition a matter of knowledge and intent to be determined in the light of all the surrounding circumstances and a question of fact to be determined at the trial. See Cowan v. Westland Realty Co., 162 Mont. 379, 512 P. 714; Lee v. Stockman's Nat. Bank, supra; Dunlap v. Nelson, 165 Mont. 291, 529 P.2d 1394.

Here the pretrial discovery considered in the light most

favorable to Bails tends to show that the alleged representations were false and that Gar and Wheeler knew they were false. Taking inferences in favor of Bails, as we must, pretrial discovery documents tend to show that they knew the carrying capacity of the ranch was nearer to 250 animal units, acreage about 4900 acres, hay production had been 400 tons and that estimates of income had been much less than $80,000. There is deposition testimony to the effect that grain yield was much less than 21 bushels per acre and that Gar would know this because he received one third of the crop from his share cropper tenant.

Defendants did request an admission that the grain yield for 1975 had been greater than 20 bushels per acre. This was not answered so it stands admitted by Bails under Rule 36(a), M.R.Civ.P. However the alleged representation relates to prior yields and is not confined to the year 1975.

While there is certainly evidence in the record that indicates that the alleged representations were based on different conditions and circumstances and upon future improvements on the premises not then existing, this creates no more than a conflict in the evidence precluding summary judgment on the elements of knowledge and intent.

The only argument on materiality of the alleged representations is whether the difference in acreage is material. With the average price per acre about $150, an inference is possible that a difference of 200-300 acres is material.

No issue was raised or argued on consequent and proximate injury.

In summary, we find that at least as to some of the alleged representations, there are genuine issues of material fact on all elements of actionable fraud and that defendants are not entitled to summary judgment as a matter of law. Accordingly,

- 9 -

summary judgment against Bails on his entire claim for relief must be and is vacated.

This action is remanded to the district court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. Robert Sykes, district judge,
sitting in place of Mr. Justice
Wesley Castles.